IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  08-cv-02617-PAB-KLM

TONYA RENEE McDANIEL,

      Plaintiff,

v.

DENVER LENDING GROUP, INC.,
UR FUNDED, LLC,
BAY VIEW LOAN,
CELINK, LLC SERVICING,
DELTA FUNDING CORP,
OCWEN FEDERAL BANK FSB,
HSBC BANK USA, NA,
DENVER PUBLIC TRUSTEE, and
JAGUAR ASSOCIATED GROUP, LLC,

      Defendants.

_____

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on **Defendants Ocwen Loan Servicing, LLC and HSBC Bank USA N.A.['s] . . . Motion to Dismiss Plaintiff's First Amended Complaint and Jury Demand** [Docket No. 14; Filed December 19, 2009] ("Ocwen/HSBC's Motion") and **Motion of Defendant Bayview Loan Servicing, LLC to Dismiss Plaintiff's First Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)** [Docket No. 18; Filed December 29, 2008] ("Bayview's Motion") [collectively, the "Motions].  Plaintiff, who is proceeding *pro se*, did not file timely responses to either Motion.  The Court *sua sponte* extended the time period for her to do so [Docket No. 29].  Although the Court directed Plaintiff to file separate responses to the Motions, she filed a single Response purporting

to respond to each Motion and a Motion to Stay, on February 19, 2009 [Docket No. 36]. For the most part, the Response is largely unresponsive to the parties' arguments for dismissal and asserts new allegations not contained in Plaintiff's operative complaint. Defendants Ocwen and HSBC filed a Reply on March 4, 2009 [Docket No. 43] and Defendant Bayview filed a Reply on March 9, 2009 [Docket No. 45].  The Motions have been fully briefed and are ripe for resolution.

The Motions have been referred to this Court for recommendation pursuant to 28 U.S.C. § 636(b)(1) and D.C. Colo. L. Civ. R. 72.1.C.  The Court has considered the relevant pleadings, the case file, and the applicable case law, and is sufficiently advised in the premises.  For the reasons set forth below, the Court recommends that the Motions be **GRANTED**.

## I. Summary of the Case

In this action, Plaintiff asserts several statutory and tort claims pursuant to federal and Colorado law based upon allegations that Defendants engaged in deceptive lending practices [Docket No. 1-2].  Specifically, Plaintiff sues several lending and loan servicing companies related to loans she secured for two properties ("Birch property" and "Quebec property").[1]  Plaintiff defaulted on both loans and the properties were ordered to be sold in foreclosure.  *Amended Complaint* [#1-2] at 4, 12.  Plaintiff filed this action in state court on February 14, 2008.  On March 18, 2008, she filed an Amended Complaint, which is the

---

[1] Defendant Denver Lending Group originated loans for both the Birch and Quebec properties in November 2005.  *Amended Complaint* [#1-2] at 2-3.  After Plaintiff was unable to make her payments on the Birch property loan, she sought to refinance the loan.  The refinancing loan for the Birch property was originated by Defendant Delta Funding Corp. in June 2006.  *Id.* at 3.

operative complaint for purposes of resolution of the Motions.  The Amended Complaint was removed from state court on December 2, 2008 after service of process on Defendants Ocwen, HSBC, and Bayview [Docket Nos. 1 & 4].  As of the date of this Recommendation, despite that the case has been pending in state court since February 2008, and in this Court since December 2008, the majority of the Defendants have not been served.

On February 2, 2009, the Court held a Status Conference and directed Plaintiff to serve the remaining Defendants, Denver Lending Group, UR Funded, LLC, CeLink LLC Servicing, Delta Funding Corp., Denver Public Trustee and Jaguar Associated Group, LLC (the "unserved Defendants") [Docket No. 29].  On February 19, 2009. Plaintiff attempted to docket insufficient proofs of service for some of these Defendants [Docket No. 34].  The Court noted that the proofs of service were ineffectual.  *Order* [#35] at 1.  The Court extended the deadline for Plaintiff to effect service to March 13, 2009.  *Id.* at 2.  Thereafter, Plaintiff sought and received an additional extension to April 13, 2009 to serve the unserved Defendants.  The Court "warned Plaintiff that no further extensions of time will be permitted and her failure to effect service on the remaining Defendants, and evidencing the same, by this deadline, will result in the Court recommending that the unserved Defendants be dismissed pursuant to Rule 4(m)."  *Order* [#50] at 2.  Although the Court stayed discovery in this matter during the pendency of the Motions, the Court informed Plaintiff that her "responsibility to serve the remaining Defendants and file proofs of service which comply with the Federal Rules of Civil Procedure remains in effect."  *Order* [#49] at 4.  Despite my clear Orders, Plaintiff failed to serve the unserved Defendants.  Therefore, they have not been made parties to this lawsuit and the time for Plaintiff to take such action has expired.

Plaintiff's Amended Complaint contains thirteen claims for relief.  Her first claim for

3

relief, which asserts a claim pursuant to the Truth in Lending Act, 15 U.S.C. § 1601, is specifically limited to Defendants Denver Lending Group and Delta Funding Corp., and will not be addressed here as neither of those Defendants has been served.  The remaining twelve claims do not delineate in their title against which Defendants they are asserted, and the Court initially assumes that Plaintiff intended to assert these claims against all Defendants.  Specifically, Plaintiff alleges that the named Defendants (1) violated the Colorado Consumer Protection Act, Colo. Rev. Stat. §§ 6-1-101, -105 (Claim II); (2) breached an implied covenant of good faith and fair dealing (Claim IV); (3) committed fraud and concealment (Claim V); (4) committed negligent misrepresentation (Claim VI); (5) committed constructive fraud (Claim VII); (6) breached their fiduciary duties (Claim VIII); (7) engaged in civil conspiracy (Claim IX); (8) committed extreme and outrageous conduct or intentional affliction of emotional distress (Claim X); (9) violated the Home Ownership and Equity Protection Act, 15 U.S.C. §§ 1602, 1639 (Claim XI); (10) were unjustly enriched (Claim XII); and (11) obtained unlawful foreclosures in violation of state law, Colo. Rev. Stat. § 38-38-101 (Claim XIII).  In an independent claim for relief (Claim III), Plaintiff also asserts what can best be characterized as an impossibility defense to explain her inability to meet her loan obligations.

Defendant HSBC is a foreign corporation which was assigned the rights to the Birch property loan by the loan originator, Defendant Delta Funding Corp.  *Ocwen/HSBC's Motion* [#14-4] at 3; *Amended Complaint* [#1-2] at 3-4.  Defendant Ocwen is a foreign corporation which was retained by Defendant HSBC to service the loan held by Defendant HSBC after assignment.  *Ocwen/HSBC's Motion* [#14-4] at 3; *Amended Complaint* [#1-2] at 3-4.  Defendant Bayview is a Florida Corporation which was retained by Defendant UR

Funded to service the loan on the Quebec property held by that Defendant after assignment of it by the loan originator, Defendant Denver Lending Group. *Bayview's Motion* [#18] at 2; *Amended Complaint* [#1-2] at 5.

For the most part, Defendants Ocwen, HSBC and Bayview assert that the claims against them should be dismissed because they do not allege the personal participation of these Defendants in the conduct which led to Plaintiff's alleged injuries. They also assert that the claims are not pled with sufficient particularity or fail to state a claim upon which relief may be granted. Plaintiff's Response is a compilation of new allegations against these Defendants ranging from Defendant Bayview's agents refusing to take Plaintiff's phone calls and wasting Plaintiff's time to Defendant Ocwen's agents telling Plaintiff that the company did not want her property but would not help her keep it. *Response* [#36] at 3, 6. To the extent that these allegations are not made or referenced in Plaintiff's Amended Complaint, I do not consider them.

## II.  Standard of Review

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). That is, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *TON Services, Inc. v. Qwest Corp.*, 493 F.3d 1225, 1235 (10th Cir. 2007). "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009).   Moreover, "[a] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do.  Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." *Id.* (citation omitted). As the Tenth Circuit has explained, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).   However, "[t]he court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Ashcroft*,129 S. Ct. at 1949 (citation omitted).

The Court notes that the parties attached extraneous documents to their pleadings. Because the Court's review of a Motion to Dismiss is based upon consideration of the allegations contained in the Amended Complaint, the Court will not consider extraneous documents attached or referenced by any party, or additional factual assertions contained

6

therein, except under limited circumstances. *See generally MacArthur v. San Juan County*, 309 F.3d 1216, 1221 (10th Cir. 2002); *Jackson v. Integra Inc.*, 952 F.2d 1260, 1261 (10th Cir. 1991). For instance, "[t]he court can take judicial notice of agency rules and regulations," *Ray v. Aztec Well Serv. Co.*, 748 F.2d 888, 889 (10th Cir. 1984), and "of publicly-filed records in our court and certain other courts concerning matters that bear directly upon the disposition of the case at hand." *United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007). Further, "'the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quoting *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002)).

Here, in addition to the Amended Complaint, the Court considers the loan documents referenced in it. More specifically, the Court considers the originating loan documents for the Birch property loan [Docket Nos. 14-6 & 14-7]. These documents are central to Plaintiff's claims and their validity has not been challenged. The Court also considers any judicial orders entered by the state magistrate or district judge authorizing the sale of the properties at issue here [Docket Nos. 14-8, 15-3 & 15-4]. These documents are matters of public record and bear directly on at least one of Plaintiff's claims.

Finally, the Court must construe the filings of a *pro se* litigant liberally. *See Haines v. Kerner*, 404 U.S. 594, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be the *pro se* litigant's advocate, nor should the Court "supply additional factual allegations to round out [the *pro se* litigant's] complaint or construct a legal theory on [his or her] behalf." *Whitney v. New Mexico*, 113 F.3d 1170,

1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110).  In addition, *pro se* litigants must

follow the same procedural rules that govern other litigants.  *Nielson v. Price*, 17 F.3d 1276,

1277 (10th Cir. 1994).

### III.  Analysis

### A.      Claim II – Colorado Consumer Protection Act, Colo. Rev. Stat. §§ 6-1-101 & -105

Plaintiff contends that Defendants violated the Colorado Consumer Protection Act

("CCPA"), Colo. Rev. Stat. §§ 6-1-101 & -105, by engaging in "deceptive trade practices,"

such as: (1) failing to disclose material information; (2) advertising services with no intention

of selling them; (3) knowingly making false misrepresentations; (4) making false or

misleading statements; and (5) representing that services are of a particular standard or

quality.  *Amended Complaint* [#1-2] at 6.  In Claim II, Plaintiff attributes no specific conduct

to Defendants Ocwen, HSBC or Bayview.

A review of Plaintiff's Amended Complaint reveals that the *general* conduct attributed

to Defendants Ocwen or HSBC is the following:

> After Plaintiff was unable to get Denver Lending Group to refinanced
> [sic] her [sic] she obtained a loan from Delta Funding and Ocwen on the
> "Birch Street Property" . . . .
>
>        . . .
>
> HSBC, BANK claims to have some rights title and interest in the
> Plaintiff's "Birch Property" but there has been no recorded Assignment of
> their rights.  Notwithstanding they purported to be a real party in interest and
> then sought and was [sic] granted a Motion for Relief From Automatic Stay
> in plaintiff's Chapter 13 Bankruptcy. . . .  HSBC, BANK and [sic] is now
> proceeding to Sale [sic] Plaintiff [sic] property on or about May 29, 2008, and
> they have not complied with CRS 38-38-101(6) and therefore the Sale of the
> property would [sic] in violation of that statute which requires . . . "Proper
> indorsement or assignment of an evidence of debt shall also include, in

> addition to the original indorsement or assignment, a certified copy of an
> indorsement or assignment recorded in the county where the property being
> foreclosed is located."  Plaintiff is seeking a Restraining Order Against this
> sale.

*Id.* a 3, 4.

A review of Plaintiff's Amended Complaint reveals that the *general* conduct attributed

to Defendant Bayview is the following:

> On or about January 18, 2008 plaintiff has been informed that once
> against [sic] the parties of her loan have changed, this time CeLink has been
> replaced by Defendant Bayview Loan Servicing Company and they have not
> filed any documents with the County recorder of Denver county in regard to
> their interest in Plaintiff's ["Quebec property"].

*Id.* at 5.

Fed. R. Civ. P. 8, which applies to all claims asserted in Plaintiff's complaint,

requires that Plaintiff set forth allegations related to Defendants' conduct and the specific

legal right this conduct violates.  *See Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d

1158, 1163 (10th Cir. 2007).  A complaint must provide "the defendant sufficient notice to

begin preparing its defense and the court sufficient clarity to adjudicate the merits."  *Id.*

Furthermore, general, conclusory allegations, without supporting factual averments, are

insufficient to state a claim for relief.  *See Riddle v. Mondragon*, 83 F.3d 1197, 1205 (10th

Cir. 1996).  Instead, "to state a claim in federal court, a complaint must explain what each

defendant did to him or her; when the defendant did it; how the defendant's actions harmed

him or her; and, what specific legal right the plaintiff believes the defendant violated."

*Nasious*, 492 F.3d at 1163.  In relation to Claim II, Plaintiff's Amended Complaint fails to

specifically allege conduct attributable to Defendants Ocwen, HSBC, or Bayview which can

reasonably be linked to Plaintiff's alleged injuries asserted in this claim.  *See, e.g., Ashcroft*,

129 S. Ct. at 1950 ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but   it has not 'show[n]'–'that the pleader is entitled to relief.'" (quoting Fed. R. Civ. P. 8(a)(2))).

Further, all claims related to false representations allegedly made in violation of the CCPA must be pled with particularity pursuant to Fed. R. Civ. P. 9(b).  *See Duran v. Clover Club Foods Co.*, 616 F. Supp. 790, 793 (D. Colo. 1985) (holding that "allegations of deceptive trade practices under the [CCPA] are subject to Rule 9(b)'s requirement of particularity").  Claim II fails to include specific allegations so as to put Defendants Ocwen, HSBC, or Bayview on notice of what conduct or representations they made that were allegedly false or misleading.  As such, this claim is insufficient on its face.  *See Allen v. United Props. & Const., Inc.*, 07-cv-00214-LTB-CBS, 2008 WL 4080035, at *13 (D. Colo. Sept. 3, 2008) (unpublished decision).   Accordingly, I recommend that Claim II be dismissed.

**B.    Claim III – Impossibility**

As a preliminary matter, although the claim does not appear to be limited to particular Defendants in the claim title, a review of the claim reveals that Plaintiff intended to assert Claim III against Defendant Denver Lending Group only.  Specifically, Plaintiff claims that "[f]rom the consummation of the Birch street loan by Denver Lending Group, plaintiff was unable to carry out the terms of repayment because she had insufficient income . . . ."  *Amended Complaint* [#1-2] at 7.  On this basis, Plaintiff apparently seeks to excuse her failure to make her monthly mortgage payments because it was impossible for her to do so.  Neither Defendant Denver Lending Group nor Delta Funding Corp. has been served with the Summons and Amended Complaint.   I find that this claim fails to attribute

any conduct to Defendants Ocwen, HSBC or Bayview and is subject to dismissal on this basis alone.

Assuming Plaintiff intended the claim to have larger application to all Defendants, impossibility of performance is not a valid basis for relief under these circumstances.  First, the only recognized legal claim for the type of harm alleged by Plaintiff here is a cause of action for interference with contract.  Such a claim generally asserts "intentional conduct of a person that renders another person's performance of [her] contractual obligations impossible or more burdensome."  *See, e.g., Omedelena v. Denver Options, Inc.*, 60 P.3d 717, 727 (Colo. Ct. App. 2002).  Broadly construing Plaintiff's third claim to be based upon the legal theory of interference with contract, it is obvious that Plaintiff has failed to state a claim against Defendants Ocwen, HSBC or Bayview upon which relief may be granted, as she has failed to allege any specific, intentional conduct undertaken by those Defendants which rendered her unable to pay her mortgage loans. Even assuming, arguendo, that the allegations raised for the first time in Plaintiff's Response that Bayview's agents refused to take her telephone calls or that Ocwen's agents told her they would not help her keep her property are true, they simply do not suffice as a matter of law to show that Defendants' acted "improperly."  *See Krystkowiak v. W.O. Brisben Cos., Inc.*, 90 P.3d 859, 871 & n.13 (Colo. 2004).

Second, the defense of legal impossibility to a breach of contract claim is founded upon unanticipated circumstances.  *See Ruff v. Yuma County Transp. Co.*, 690 P.2d 1296, 1298 (Colo. Ct. App. 1984).  Because Plaintiff admits that she entered into loans based upon inflated financial information she provided in her loan documents and she knew that from the loans' inception she had insufficient income to pay her monthly loan payments,

she has failed to articulate any unanticipated circumstances that may plausibly excuse her breach.  Third, "[t]he mere fact that a contract is unprofitable as to one of the parties, or that it was improvidently entered into, is not, in and of itself, a sufficient basis for avoiding contractual obligations."  *Great Am. Ins. Co. v. City of Boulder*, 476 P.2d 586, 587 (Colo. Ct. App. 1970); *see also Beals v. Tri-B Assocs.*, 644 P.2d 78, 81 (Colo. Ct. App. 1982) (noting that changed economic circumstances, which are a known risk at the time of entry into a contract, do not provide a basis for rescission or relief).  Accordingly, I recommend that Claim III be dismissed.

### C.    Claim IV – Breach of Implied Covenant and Good Faith and Fair Dealing

The theme throughout Plaintiff's Amended Complaint is that certain Defendants extended loans to Plaintiff knowing that she did not have the financial ability to make the monthly payments toward those loans.  Regardless of whether any Defendant knew this to be the case, it is axiomatic that an individual who executes loan documents and promises to pay a sum certain toward those loans each month, but who fails to comply with the terms of those loans, is in default.  *See, e.g.*, *Old Colony Ventures I, Inc. v. SMWNPF Holdings, Inc.*, 918 F. Supp. 343, 348 (D. Kan. 1996) (recognizing that where a party fails to make payments required by the loan, this failure constitutes default); *State ex rel. Salazar v. Cash Now Stores, Inc.*, 12 P.3d 321, 327 (Colo. Ct. App. 2000), *rev'd on other grounds by* 31 P.3d 161 (Colo. 2001) (noting that "one constant element of a loan is that the borrower has an *expectation to repay the money advanced unconditionally*, and not merely in default of some other occurrence" (citation omitted)); *see also Loan Agreement on Birch Property* [#14-6] at 2 (noting that if borrower did not pay full loan amount each month, she would be in default; *Loan Agreement on Birch Property* [#14-7] at 8 (noting that

if borrower makes a material misstatement in her loan documents, she would be in default).

Nevertheless, in relation to Claim IV, Plaintiff contends her default should be excused because "Defendants by their actions . . . acted dishonestly and acted outside accepted commercial practices to deprive Plaintiff of what should have been the benefits of the contract.  Further, Defendants Denver Lending Company, HSBC, Delta Funding Corporation and Ocwen Federal Bank made the loans on to [sic] Plaintiff without any regard for her financial ability to afford the monthly payments." *Amended Complaint* [#1-2] at 8. On this basis, Plaintiff contends that Defendants behaved unreasonably and such "conduct caused damages to Plaintiff." *Id.*

As a preliminary matter, only those Defendants who were parties to a contract with Plaintiff can theoretically be liable pursuant to this claim.  *See generally* Restatement (Second) of Contracts § 205 (2008) (noting that the implied duty applies to *parties* to a contract).  Here, a review of Claim IV reveals that the claim is not directed to Defendant Bayview, who was a mere servicer of the Quebec property loan and not a party to any loan contract entered into by Plaintiff.  As such, the Court does not consider this claim in relation to Defendant Bayiew further.  As to Defendants Ocwen and HSBC, Plaintiff's claim can be liberally interpreted to allege that the contracts entered into by these Defendants and Plaintiff contained an implied duty of good faith and fair dealing.  *See Transam. Premier Ins. Co. v. Brighton Sch. Dist. 27J*, 940 P.2d 348, 351 (Colo. 1997); *Amoco Oil. Co. v. Ervin*, 908 P.2d 493, 498 (Colo. 1995) (holding that every Colorado contract contains an implied covenant of good faith and fair dealing to "effectuate the intentions of the parties or to honor their reasonable expectations").

Regardless of whether the conduct that is attributable to Defendant Ocwen and

HSBC supports this claim, by its terms, the claim specifically references conduct taken at time of the inception of the loans on the Birch and Quebec properties. *See id.* at 8 (noting that Defendants allegedly "made the loans on to Plaintiff without any regard for her financial ability to pay"). While such allegations may support a claim against Defendants Denver Lending Group or Delta Funding Corp., who originated the loans, such allegations do not support a cause of action against Defendants Ocwen and HSBC. Nevertheless, giving Plaintiff the benefit of liberal pleading interpretation, and considering the Amended Complaint in its entirety, the Court considers the plausibility of the claim on its merits as to these Defendants.

As to Defendant Ocwen, Defendants note that Plaintiff was never a party to a contract with Defendant Ocwen [Docket No. 14-7].[2] Similar to Defendant Bayview in regard to the Quebec property loan, Defendant Ocwen was merely the loan servicer at some point in the history of the Birch property loan. Although the allegations contained in Plaintiff's Amended Complaint infer that Defendant Ocwen was the lender on the Birch property loan, a review of the loan agreement referenced in the Amended Complaint indicates that the lender on the Birch property loan was Defendant Delta Funding Corp. I need not accept as true allegations contained in a complaint which I know to be inaccurate or merely conclusory. *Ashcroft*, 129 S. Ct. at 1950 ("[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions,

_____

[2] Although Plaintiff's Amended Complaint indicates that the Birch property was refinanced by Defendant Delta Funding Corp. and Ocwen, the only parties to the loan agreement are Plaintiff and Defendant Delta Funding Corp. [Docket No. 14-7]. I may consider this document in my adjudication of the Motions because it is referenced in Plaintiff's amended complaint, *see Amended Complaint* [#1-2] at 3, is central to Plaintiff's claims, and is not disputed by the parties. *See Alvarado*, 493 F.3d at 1215.

are not entitled to the assumption of truth."); *see also Bryan v. Stillwater Bd. of Realtors*, 578 F.2d 1319, 1321 (10th Cir. 1977) (noting that Court accepts only well-pled allegations as true and is free to reject conclusions or opinions not supported by facts).  As such, Defendants contend, and I agree, that any implied covenant of good faith and fair dealing that may be applicable to the contracts at issue here does not apply to Defendant Ocwen, who was never a party to a contract with Plaintiff, either through assignment or otherwise.

As to Defendant HSBC, Defendants contend that the only contract attributable to Defendant HSBC was entered into by Defendant Delta Funding Corp. and later assigned to Defendant HSBC.  According to the Amended Complaint, Defendant HSBC's sole involvement with the Birch property contract was to intervene in Plaintiff's bankruptcy proceedings and to seek foreclosure of the Birch property after Plaintiff failed to make her monthly payments. *Amended Complaint* [#1-2] at 4.  "Under Colorado law, the implied duty of good faith and fair dealing limits a party's ability to 'act unreasonably in contravention of the other party's *reasonable expectations.*'"  *Cobank, ACB v. Reorganized Farmers Co-op Ass'n*, 170 Fed. Appx. 559, 565 (10th Cir. 2006) (unpublished decision) (citation omitted) (emphasis in original).  However, the duty only "applies when one party has discretionary authority to determine certain terms of the contract, such as quantity, price, or time . . . [and] may be relied upon only when the manner of performance under a contract terms allows for discretion on the party of either party."  *Amoco Oil*, 908 P.2d at 498.  "When one party uses discretion conferred by the contract to act dishonestly or to act outside of accepted commercial practices to deprive the other party of the benefit of the contract," a breach of the implied duty may be found.  *Wells Fargo Realty Advisors Funding, Inc. v. Uioli, Inc.*, 872 P.2d 1359, 1363 (Colo. Ct. App. 1994).

15

As a preliminary matter, it is entirely unclear from the vague allegations of the Amended Complaint which *discretionary* terms of the parties' agreement Defendant HSBC is alleged to have unreasonably applied.  Given that this claim fails to put Defendant HSBC on notice of the terms upon which it is accused of dishonestly acting, I find that the claim is subject to dismissal on this ground alone.  *See TV Commc'ns Network, Inc. v. ESPN, Inc.*, 767 F. Supp. 1062, 1069 & n.5 (D. Colo. 1991) (noting that the requirements of Fed. R. Civ. P. 8 guarantee "that defendants enjoy fair notice of what the claims against them are and the grounds upon which they rest"); *see also Theisen v. El Paso County Courts*, No. 09-cv-00141-ZLW, 2009 WL 1269721, at *1 (D. Colo. May 4, 2009) (unpublished decision) (noting that "[p]rolix, vague, or unintelligible pleadings violate the requirements of Rule 8").  Putting aside whether Plaintiff alleges that any terms of the contract at issue allowed Defendant HSBC to exercise its discretion, I find that none of the alleged conduct attributable to Defendant HSBC provides a sufficient factual basis to plausibly state a claim that Defendant acted dishonestly or abused its discretion in violation of the implied covenant of good faith and fair dealing in the loan agreement.  *See Ashcroft*, 129 S. Ct. at 1954 (noting that "the Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context. . . .  And Rule 8 does not empower [plaintiffs] to plead bare elements of [their] cause of action, affix the label 'general allegation,' and expect [their] complaint to survive a motion to dismiss").

As set forth in the Amended Complaint, Plaintiff admittedly defaulted on the Birch property when she did not make her loan payments.  As such, any action taken pursuant to that contract by a later assignee, including intervention in bankruptcy proceedings or seeking foreclosure of the Birch Property (which were approved by the state court), was

undertaken pursuant to the express terms of the contract [Docket Nos. 14-6, 14-7 & 14-8]. *See Amended Complaint* [#1-2] at 4.  Further, considering that Plaintiff defaulted on her loans, and that she admits in her Amended Complaint that she knew at the time she entered into those loans that she could not repay them, she has failed to set forth any "reasonable expectation" that Defendant HSBC would not seek to intervene in her bankruptcy proceedings or foreclose on the Birch property.  Accordingly, I recommend that Claim IV be dismissed.

### D.      Claim V – Fraudulent Concealment

As with claims asserted pursuant to the CCPA, claims for fraudulent concealment must be stated with particularity.  *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1125 (10th Cir. 1997) (noting that pursuant to Fed. R. Civ. P. 9(b), "the plaintiff must set forth an explanation as to why the statement or omission was false or misleading"); *DeVries v. Taylor*, 92-B-409, 1993 WL 331001, at **1-2 (D. Colo. June 28, 1993) (unpublished decision) (noting that all claims of fraud, including fraudulent concealment, must be pled with particularity and "identify the undisclosed fact which, in equity and good conscience, should have been revealed").  Pursuant to Colorado law, fraudulent concealment can only be shown by alleging that the defendant knowingly concealed a material fact from the plaintiff who was ignorant of this fact, the defendant intended that the concealment be acted upon, and the plaintiff suffered damages as a result.  *Morrison v. Goodspeed*, 68 P.2d 458, 462 (Colo. 1937).  As noted above in relation to Plaintiff's CCPA claim, Plaintiff has failed to set forth specific facts regarding the conduct of Defendants Ocwen, HSBC or Bayview which provides notice to these Defendants of the material information they allegedly knowingly concealed.  *See* Fed. R. Civ. P. 8 & 9; *TV Commc'ns*, 767 F. Supp at

17

1969. Where "there is nothing to support plaintiff's allegation that defendant . . . [committed fraudulent conduct]," any conclusory allegations to this effect are "not well-pled facts" and the Court need not accept such allegations as true. *Coburn v. Nordeen*, 72 Fed. Appx. 744, 746 (10th Cir. 2003) (unpublished decision). Accordingly, I recommend that Claim V be dismissed.

### E.   Claim VI – Negligent Misrepresentation

Plaintiff's sole allegation in relation to Claim VI is that the "representations of Defendants were negligent, thus causing damages to Plaintiff." *Amended Complaint* [#1-2] at 9. While this claim does not necessarily need to be pled with particularly, Plaintiff must nevertheless provide a plausible factual basis for her claim, including how these parties caused her alleged injuries. *Nasious*, 492 F.3d at 1163. Further, "the court need not accept as true any conclusory allegations contained in the complaint." *Coburn*, 72 Fed. Appx. at 746. Here, other than this vague claim, Plaintiff's Amended Complaint fails to attribute any representations, negligent or otherwise, to Defendants Ocwen, HSBC or Bayview. While Plaintiff generally contends that Defendants Denver Lending Group and Delta Funding Corp. told her that she could afford her payments, this conduct is not attributable to Defendants at issue here, nor does such a contention provide any notice to these Defendants of what misrepresentations *they* allegedly made to Plaintiff which were negligent. As such, this claim is insufficient on its face. Accordingly, I recommend that Claim VI be dismissed.

### F.   Claim VII – Constructive Fraud

The necessity of pleading a claim for constructive fraud with particularly is not a

settled issue.  *Compare Rosales v. AT&T Info. Sys., Inc.*, 702 F. Supp. 1489, 1498 (D.

Colo. 1988), *with Scott Sys., Inc. v. Scott*, 996 P.2d 775, 780 (Colo. Ct. App. 2000).

Regardless, I find that Claim VII nevertheless fails because Plaintiff has failed to provide

a plausible factual basis for her claim, including how the conduct of Defendants Ocwen,

HSBC and Bayview led to her alleged injuries.  Moreover, Plaintiff fails to set forth any legal

basis, including the elements of constructive fraud, to state a claim for relief pursuant to this

claim.  *See generally Nasious*, 492 F.3d at 1163.  Accordingly, I recommend that Claim VII

be dismissed.

### G.    Claim VIII – Breach of Fiduciary Duty

In relation to Claim VIII, Plaintiff contends that  "Denver Lending Group and Delta

Funding breached their fiduciary duty to Plaintiff by putting her into a loan that is beyond

her financial ability, which was based on fraudulent documents, which provided no financial

benefit to her and subsequently by concealing from her the actual terms of the mortgage

loan and by not complying with requests."  *Amended Complaint* [#1-2] at 9.  On this basis,

Plaintiff contends the "breach of fiduciary duty by Denver Lending Company & Delta

Funding was a cause of Plaintiff's damages."  *Id.* at 10.  Although Claim VIII also purports

to assert that Defendants Ocwen and HSBC owed Plaintiff a fiduciary duty, no specific

conduct allegedly breaching that duty is attributed to these Defendants and, on its face, the

claim attributes conduct to and asserts liability against Defendants Denver Lending Group

and Delta Funding Corp. only.  In addition, I note that Claim VIII does not reference

Defendant Bayview or attribute any conduct to this Defendant.  Therefore, I find that a

reasonable review of this claim does not articulate conduct sufficient to plausibly state a

claim against Defendants Ocwen, HSBC or Bayview.  Accordingly, I recommend that Claim

19

VIII be dismissed.

### H.    Claim IX – Civil Conspiracy

Plaintiff contends that Defendants "agreed by words or conduct to accomplish an unlawful goal" through "unlawful means" and "performed one or more unlawful acts . . . to accomplish an unlawful goal." *Amended Complaint* [#1-2] at 10.  Specifically, Plaintiff claims that Defendants falsified documents and failed "to provide her with documents required to be provided to her by law and by concealing the documents which she signed to which she is entitled to [sic]." *Id.* Although Plaintiff alleges that "all Defendants" failed to provide or concealed documents, she does not allege facts specifically attributing this conduct to Defendants Ocwen, HSBC, or Bayview.  Nor can this conduct be inferred from the limited factual allegations cited against these Defendants in Plaintiff's Amended Complaint.  *See, e.g.*, *Ashcroft*, 129 S. Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Coburn*, 72 Fed. Appx. at 746 (noting that a plaintiff's characterizations of a defendant's conduct must go beyond mere conclusory allegations; rather, such allegations must be supported by sufficient factual allegations which speak to the elements of the alleged offense).

To state a claim for civil conspiracy, Plaintiff "must allege *specific facts* showing agreement and concerted action among the defendants." *Durre v. Dempsey*, 869 F.2d 543, 545 (10th Cir. 1988) (emphasis added).  It is not enough for Plaintiff to merely state that Defendants engaged in a conspiracy.  *See id.* ("Conclusory allegations of conspiracy are insufficient . . . ."); *Sieverding v. Colo. Bar Ass'n*, No. Civ. A.02-M-1950 (OES), 2003 WL 22400218, at *18 (D. Colo. Oct. 14, 2003) (unpublished decision) (holding that plaintiffs' "conclusory statements with regard to the existence of conspiracies surrounding every

event that they allege" fails "to allege specific facts that fulfill the requirements of the elements of a state law claim for civil conspiracy" and are "insufficient to state a claim"). Rather, to state a conspiracy claim pursuant to Colorado law, a plaintiff must allege the existence of "(1) two or more persons, (2) an object to be accomplished, (3) an agreement on the object or course of action, and (4) one or more unlawful overt acts." *Schneider v. Midtown Motor Co.*, 854 P.2d 1322, 1326 (Colo. Ct. App. 1992).

Nowhere in Plaintiff's Amended Complaint, other than in this vague and conclusory claim, does Plaintiff contend that Defendants, who are all separate and independent lenders or loan servicers, acted in agreement with each other to withhold information. Moreover, nowhere in her Amended Complaint does she indicate the object to be accomplished by the alleged conspiracy or the factual basis for her allegation that an agreement between all of the Defendants existed.  In addition, to the extent that Plaintiff contends that Defendants failed to provide certain documents or purposefully concealed certain documents, she fails to identify the missing documents or explain their alleged material value.  Moreover, the Court notes that the actions about which Plaintiff appears to complain are likely only relevant to the originators of her loans, Defendants Denver Lending Group and Delta Funding Corp., because the alleged conduct appears to have occurred at the time of the inception of the loans.  Plaintiff's conclusory allegations against the Defendants at issue here, without sufficient factual averments, are insufficient to state a claim for civil conspiracy.  *Houston v. Mile High Adventist Acad.*, 846 F. Supp. 1449, 1457-58 (D. Colo. 1994) (holding that "the fail[ure] to identify any [specific] factual basis showing an agreement between the parties . . . do[es] nothing to inform Defendants of the nature of the claim" and is insufficient as a matter of law); *see also Twombly*, 550 U.S. at

555-57 (refusing to accept plaintiffs' bare conclusion that an illegal agreement existed, which is a legal conclusion, as true without supporting plausible and factual allegations). Accordingly, Claim IX should be dismissed.

## I.  Claim X – Extreme and Outrageous Conduct/Intentional Infliction of Emotional Distress

Plaintiff contends that "Plaintiff was taken advantage of by Defendants when she was in a weakened condition and Defendants succeeded in putting her in a very onerous loan in which the only end result can be foreclosure and loss of equity." *Amended Complaint* [#1-2] at 10.  Putting aside the reasonableness of Plaintiff's characterization of the events leading up to the execution of her loan agreements, and accepting such allegations as true, Plaintiff concedes in her Amended Complaint that "[l]iability for outrageous conduct can be found only if the conduct is so outrageous in character and so extreme in degree as to go beyond the bounds of decency" in a civilized society.  *Coors Brewing Co. v. Floyd*, 978 P.2d 663, 666 (Colo. 1999) (citation omitted).  To state a claim for outrageous conduct, Plaintiff must allege that (1) Defendants engaged in extreme and outrageous conduct, (2) recklessly and with the intent to cause severe emotional distress, and (3) such conduct did cause sever emotional distress.  *Culpepper v. Pearl Street Bldg., Inc.*, 877 P.2d 877, 882 (Colo. 1994).

The only conduct at issue in this claim appears to be limited to conduct that occurred at the inception of the loans.  Given that none of the Defendants at issue here were lenders on the original loans, the Amended Complaint fails to provide a sufficient link between these Defendants' alleged conduct and the conduct at issue in this claim.  Further, a liberal reading of the Amended Complaint does not reveal any conduct attributable to Defendants

Ocwen, HSBC or Bayview which plausibly rises to the level of conduct "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *See id.* The only conduct attributable to Defendant Bayview is its assumption of loan servicing duties on the Quebec property loan from Defendant CeLink.   The only conduct attributable to Defendant Ocwen is its assumption of loan servicing duties on the Birch property loan.   The only conduct attributable to Defendant HSBC is assignment to it of the Birch property loan from the loan originator and its participation in bankruptcy and foreclosure proceedings when Plaintiff failed to make her monthly payments thereafter.

To the extent that Plaintiff contends that these Defendants' conduct was extreme and outrageous given that when she entered into the loans on both properties she suffered from "dyslexia and post mortem depression [and had a] limited educational background [and] lacked financial sophistication and had limited financial history with poor credit history," see *Amended Complaint* [#1-2] at 10, there is no assertion that these Defendants had notice or knowledge of such history or any intent to cause her harm because of it. To the extent that Plaintiff contends that the Birch property was foreclosed upon close in time to the loss of Plaintiff's father, there is no assertion that these Defendants had notice or knowledge of such loss or proceeded recklessly or with the intent to cause Plaintiff additional emotional distress.   In addition, Plaintiff's admission that she defaulted on the loans is particularly relevant to the determination of whether the alleged conduct of these Defendants plausibly rises to the level of extreme and outrageous conduct.

In order to survive a motion to dismiss, Plaintiff must "nudge[] [her] claims across the line from conceivable to plausible."   *Twombly*, 550 U.S. at 566-70 (noting that plausibility

is defeated where the conduct attributable to Defendants is also compatible with, and more likely explained by, lawful behavior).  In this regard, I find that the Amended Complaint does not give "the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims" against *these* Defendants.  *Ridge at Red Hawk*, 493 F.3d at 1177.  While the Amended Complaint may state a claim for relief against the loan originators in relation to Claim X, it is insufficient on its face as to Defendants Ocwen, HSBC and Bayview.  Accordingly, Claim X should be dismissed.

**J.     Claim XI – Home Ownership and Equity Protection Act, 15 U.S.C. §§ 1602 & 1639**

The Home Ownership and Equity Protection Act ("HOEPA"), 15 U.S.C. §§ 1602 & 1639, is an amendment of the Truth in Lending Act ("TILA").  In order to be subject to the protections of HOEPA, a borrower must provide a factual basis for this section's application.  Specifically, the loan at issue must exceed a particular interest rate or the points and fees payable at closing must exceed certain rates.  15 U.S.C. § 1602(aa)(1).  Putting aside whether HOEPA applies to the subject loans, Defendants Ocwen and HSBC argue that this claim is barred by the applicable statute of limitations.  Defendant Bayview argues that this claim is barred against loan servicers.

Addressing Defendant Bayview's contention first, because HOEPA operates under the purview of TILA, as with TILA, this section applies only to originating lenders or its assignees.  Indeed, TILA expressly disclaims any liability of loan servicers.  15 U.S.C. § 1641(f).  Moreover, TILA recognizes that loan servicers do not become subject to its terms on the basis of assignment.  *Id.*  As Plaintiff's Amended Complaint does not allege that Defendant Bayview owned the loan, but that Defendant Bayview merely replaced

Defendant CeLink as the loan servicer on the Quebec property loan, neither TILA, nor amendments to it, i.e., HOEPA, apply to Defendant Bayview. *See, e.g.*, *Hubbard v. Ameriquest Mortg. Co.*, No. 05-cv-389, 2008 WL 4449888, at **3-4 (N.D. Ill. Sept. 30, 2008) (unpublished decision) (holding that where there are no allegations to support notion that the mere loan servicer had any ownership interest in the loan, TILA does not apply). Although Defendant Ocwen does not make this argument, this holding applies in full force to Defendant Ocwen, who was also a loan servicer, rather than a lender, on the Birch property loan.   Therefore, Claim XI is insufficient on its face as applied to Defendants Bayview and Ocwen.

Addressing Defendant HSBC's contention next, because HOEPA is an amendment of TILA, a one-year statute of limitations applies. *Foster v. EquiCredit Corp.*, No. Civ. A. 99-6393, 2001 WL 177188, at *2 (E.D. Pa. Jan. 26, 2001) (unpublished decision).  As such, the statute begins to run from the date of consummation of the loan.  *Betancourt v. Countrywide Home Loans, Inc.*, 344 F. Supp. 2d 1253, 1258 (D. Colo. 2004).  The relevant injury in relation to this claim is the alleged onerous terms of the subject loans.  While the TILA statute of limitations has been found to be subject to equitable tolling, see *In re Lewis*, 342 B.R. 384 (table) (10th Cir. May, 4, 2006), Plaintiff must provide a factual basis to toll the statute.  *See Aldrich v. McCulloch Props.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 2003).

Although the expiration of the statute of limitations is an affirmative defense, and often not capable of determination on a motion to dismiss, where the complaint or referenced documents clearly indicate that a claim is time-barred, I may adjudicate the defense at this stage.  *Id.* (noting that a statute of limitations defense is appropriately resolved pursuant to a Fed. R. Civ. P. 12(b) motion "when the dates given in the complaint

make clear that the right sued upon has been extinguished"); *see also* 5B Charles Alan Wright & Arthur R. Miller*, Federal Practice and Procedure* § 1357, at 714-21 (3d ed. 2004). Here, the Amended Complaint and documents referenced in it clearly indicate that the loans related to the Birch property closed in November 2005 and June 2006 and the loan related to the Quebec property closed in November 2005.  As such, any claim regarding the validity of the Birch property loans must have been asserted no later than November 2006 or June 2007, and any claim related to the validity of the Quebec property loan must have been asserted no later than November 2006.  Plaintiff filed this action in February 2008.  On its face, this claim is untimely.  As such, the burden shifts to Plaintiff to provide a basis for tolling the statute.  *See Rezaq v. Nalley*, 07-cv-02483-LTB-KLM, 2008 WL 5172363, at *5 (D. Colo. Dec. 10, 2008) (unpublished decision) (recognizing that where statute of limitations defense is clearly implicated pursuant to a motion to dismiss, Plaintiff has the burden to provide a factual basis to equitably toll the statute).

Because the statute of limitations at issue here derives from a federal statute, the applicability of the doctrine of equitable tolling is governed by federal precedent.  In order to show that the statute of limitations should be equitably tolled, Plaintiff must show (1) that she was diligently pursuing her rights; but (2) some extraordinary circumstances prevented her from timely filing her claim.  *Lawrence v. Florida*, 549 U.S. 327, 336 (2007) (citation omitted).  In her Response, Plaintiff provides no rational basis for tolling the statute beyond the one-year statute of limitations.  While she generally claims in her Amended Complaint that she was misled or pressured by Defendants Denver Lending Group and Delta Funding Corp. when she secured the loans, she attributes no similar wrongdoing to Defendants Ocwen or HSBC nor does she suggest that any misinformation she may have received

26

from any Defendant caused her not to discover her alleged injuries until after expiration of the statute of limitations.  Indeed, she indicates that she purchased the Quebec property for its alleged investment value, in part, by securing a mortgage on her residence, the Birch property.  *Amended Complaint* [#1-2] at 2-4.  Moreover, she claims that at the time she entered into these loans she knew she did not fully understand their terms, but that they were the only loans she could obtain to "save her properties."  *Id.* at 3.  She claims that regardless, as of November 2005 and June 2006, she understood that she could not afford the mortgage payments on either property and that her originating lenders should have known this at that time.  *Id.* at 4, 7.

As noted above, the relevant injury in relation to this claim is the alleged onerous terms of the subject loans.  *See id.* at 11 ("The terms of the loan transactions are clearly unconscionable . . . [such] that the loans [should] be modified to make [them] affordable").  To the extent that any misconduct by Plaintiff's originating lenders led her to enter into loans with unconscionable terms, she concedes in her Amended Complaint that she was aware of this fact by the dates when the loans were secured.  *See id.* at 4 (admitting that at the time of inception of the loans, "Plaintiff was in no financial position to afford the mortgage payments required on the 'Quebec Property' and the 'Birch Property . . . .'").  As such, Plaintiff knew about her alleged injury at the time of the loans' consummation, but proceeded anyway to purchase the properties and/or avoid foreclosure.

I find that Plaintiff has failed to plausibly assert any basis for equitable tolling.  *See, e.g.*, *Bennett v. Coors Brewing Co.*, 189 F.3d 1221, 1235 (10th Cir. 1999) (recognizing that equitable tolling does not apply when a plaintiff is aware of the facts necessary to bring a claim at the time required to assert it by the statute of limitations); *Edwards v. Int'l Union,*

*UPGWA*, 46 F.3d 1047, 1055 (10th Cir. 1995) (refusing to apply equitable tolling when at the time of the expiration of the statute of limitations, plaintiff "was fully aware of [Defendants' alleged] misconduct"); *McIntire v. Tulsa County Sheriff*, 121 Fed. Appx. 295, 300-01 (10th Cir. 2005) (unpublished decision) (noting that equitable tolling only applies when a plaintiff is unaware of his claim at the time the statute of limitations requires it to be asserted); *see also Casias v. United States*, 532 F.2d 1339, 1342 (10th Cir. 1976) (holding that alleged diminished capacity does not toll the statute of limitations); *Barnhart v. United States*, 884 F.2d 295, 299-300 (7th Cir. 1989) (noting that the alleged lack of mental capacity did not render plaintiff incapable of timely discovering or understanding his injury). Given the allegations contained in Plaintiff's Amended Complaint, and her failure to assert a basis for application of equitable tolling, I find that any claims raised by Plaintiff pursuant to TILA or HOEPA are time barred.   Accordingly, for the reasons stated above, I recommend that Claim XI be dismissed.[3]

### K.   Claim XII – Unjust Enrichment

Plaintiff contends that Defendants were unjustly enriched by the benefits they received by virtue of "compensation for brokers [sic] fees, etc." *Amended Complaint* [#1-2]

---

[3] To the extent that this claim also references the Colorado Consumer Protection Act, § 38-40-105, the claim fails to provide sufficient factual allegations to state a claim.  For instance, Plaintiff contends that "[t]he terms of the loan transactions are clearly unconscionable, as that term is defined in CRS section 105[1](d)."  *Amended Complaint* [#1-2] at 4.  Other than this conclusory allegation, Plaintiff does not set forth which terms are allegedly unconscionable and why such a legal conclusion should be drawn.  "These bare assertions . . . amount to nothing more than a 'formulaic recitation . . .'" of the language of the statute and, without supporting factual averments, are "not entitled to be assumed true."  *Ashcroft*, 129 S. Ct. at 1950-51 ("While legal conclusions can provide a framework of a complaint, they must be supported by factual allegations.").  Fed. R. Civ. P. 8 "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation."  *Id.* at 1949.  Assuming Plaintiff intended to assert a cause of action related to section 38-40-105, she has failed to nudge her claim from possible to plausible and, therefore, the claim must be dismissed.  *See id.* at 1949-51.

at 11.  To state a claim for unjust enrichment, Plaintiff must show that Defendants received a benefit at Plaintiff's expense under circumstances that would make it unjust for Defendants to retain such benefit.  *Salzman v. Bachrach*, 996 P.2d 1263, 1265-66 (Colo. 2000).  To the extent that Plaintiff contends that brokers' fees account for the unjust benefit, the Court notes that Plaintiff has failed to plausibly state a claim for unjust enrichment against Defendants Ocwen, HSBC or Bayview.  None of these Defendants originated the subject loans on the Birch or Quebec properties, nor has Plaintiff alleged that these specific Defendants received brokers' fees.  Considering that Plaintiff admittedly inflated or falsified information contained in her loan application, see *Amended Complaint* [#1-2] at 3, and admittedly did not pay her mortgage payments which necessitated certain Defendants seeking foreclosure, Plaintiff fails to plausibly allege any other benefit received by these Defendants that was unjustly obtained.  Accordingly, I recommend that Claim XII be dismissed.

###       L.       Claim XIII –  Colo. Rev. Stat. § 38-38-101

Although it is unclear from the Amended Complaint, Plaintiff appears to contend that Defendants obtained unlawful foreclosures of the Birch and Quebec properties because they failed to record the indorsement or assignment of their interests in these properties pursuant to Colo. Rev. Stat. § 38-38-101(6).  *Amended Complaint* [#1-2] at 11-12.  As a preliminary matter, the Court makes two observations about this claim.  First, to the extent that Plaintiff is challenging foreclosure proceedings conducted by the state court, this lawsuit is not a method for appeal of state court decisions authorizing foreclosures. Pursuant to the *Rooker-Feldman* doctrine, the Court has no authority to sit in appellate review of that decision, and such a claim should be summarily denied.  *See D.C. Court of*

*Appeals v. Feldman*, 402 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *see also Johnson v. DeGrandy*, 512 U.S. 997, 1005-06 (1994) (recognizing that the doctrine applies when federal party was also involved in the state litigation); *Atl. Coast Line R.R. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 287 (1970) ("Proceedings in state court should normally be allowed to continue unimpaired by intervention of the lower federal courts, with relief from error, if any, through the state appellate courts . . . ."). The *Rooker-Feldman* doctrine is applicable both to claims at issue in the state court judgment and to claims that are "inextricably intertwined" with that judgment. *Kenmen Eng'g v. City of Union*, 314 F.3d 468, 473 (10th Cir. 2002).

Second, as set forth in Plaintiff's Amended Complaint, the only Defendants whom Plaintiff claims to be responsible for the initiation of foreclosure proceedings are Defendant UR Funded (Quebec property) and Defendant HSBC (Birch property). *Amended Complaint* [#1-2] at 4. The conduct of Defendant UR Funded is not at issue here as it has not been served with the Summons and Amended Complaint. Therefore, to the extent that the Court addresses the merits of Claim XIII, I limit my analysis to the conduct attributable to Defendant HSBC only.

Plaintiff contends that "Defendants have not *recorded all of the required documents evidencing their debts and all of its indorsement and assignment* [sic] *in the County of Denver, Denver Colorado.*" *Amended Complaint* [#1-2] at 12 (emphasis in original). Plaintiff's claim, namely that any indorsement and assignment must be recorded, is based upon a misinterpretation of Colo. Rev. Stat. § 38-38-101(6), which she claims requires an assignee to record an indorsement and assignment of a property in order to obtain a foreclosure. However, contrary to Plaintiff's interpretation, the statute requires only that

30

proper indorsement or assignment be provided either by (1) the "qualified holder present[ing] the original evidence of debt or a copy thereof to the officer together with a statement in the certification of the qualified holder or [a] statement of the attorney for the qualified holder" or (2) "a certified copy of an indorsement or assignment recorded in the county where the property being foreclosed is located." Colo. Rev. Stat. § 38-38-101(6). Regardless of whether Defendant HSBC recorded its indorsement or assignment, the statute does not require evidence of either in order to effect a foreclosure, assuming that Defendant HSBC submitted a proper indorsement or assignment in lieu of recordation. As such, I find that the statute does not entitle Plaintiff to relief. As Plaintiff's claim is premised on an incorrect interpretation of the requirements for a party to obtain a foreclosure, I find that the complaint is not "legally sufficient to state a claim for which relief may be granted." *Sutton*, 173 F.3d at 1236 (citation omitted).

Further, as noted above, it is not this Court's role to sit in appellate review of the state court's finding that Defendant HSBC was entitled to foreclose on Plaintiff's property [Docket Nos. 14-8 & 14-9]. Regardless of whether the statute provides Plaintiff a basis for relief, or whether her claim can be interpreted broadly to suggest that none of the required documentation was submitted to the state court to authorize foreclosure, the entertainment of her claim beyond this stage would necessarily prompt a determination of whether the foreclosure was properly obtained pursuant to state law and whether the state court reached the appropriate result. When such is the case, Plaintiff's avenue for obtaining the relief that she seeks is through the state appellate courts, not this Court. *See Atl. Coast Line*, 398 U.S. at 287 (holding that pursuant to the *Rooker-Feldman* doctrine, the state appellate process should be used to set aside a state court decision). Accordingly, I

recommend that Claim XIII be dismissed.

### IV.  Conclusion

For the reasons stated above, the Court RECOMMENDS that Ocwen/HSBC's Motion [#14] be **GRANTED**, that Bayview's Motion [#18] be **GRANTED** and that Plaintiff's Amended Complaint against them be **DISMISSED** with prejudice.

I further **RECOMMEND** dismissal without prejudice of the remaining Defendants and claims pursuant to Fed. R. Civ. P. 4(m), which authorizes dismissal of the case without prejudice against unserved parties where good cause for the failure to serve has not been shown.  In this case, I have previously found that Plaintiff failed to timely or adequately serve the individual Defendants [Docket Nos. 35 & 50].  Although the Court may extend the time for a plaintiff to serve a defendant even without a showing of good cause, *Espinoza v. United States*, 52 F.3d 838, 840-41 (10th Cir. 1995), the Court is not inclined to do so here.  This case has been pending in state court since February 2008, and in this Court since December 2008.  Plaintiff failed to serve the remaining Defendants within 120 days of the case's filing or removal and failed to comply with any of the deadlines set by the Court to effect service.  Further, Plaintiff was warned in advance that the penalty for failing to timely serve the remaining Defendants would be their dismissal.  *See generally Raeth v. Bank One*, 05-cv-02644-WDM-BNB, 2008 WL 410596, at *3 & n.4 (D. Colo. Feb. 13, 2008) (unpublished decision).

IT IS FURTHER **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have ten (10) days after service of the Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is

assigned.   A party's failure to serve and file specific, written objections waives *de novo*

review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*,

474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal

questions.   *Makin v. Colo. Dept. of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v.*

*Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).   A party's objections to this

Recommendation must be both timely and specific to preserve an issue for *de novo* review

by the District Court or for appellate review.   *United States v. One Parcel of Real Prop.*, 73

F.3d 1057, 1060 (10th Cir. 1996).

Dated:  June 2, 2009

                              BY THE COURT:

                               s/ Kristen L. Mix
                              U.S. Magistrate Judge
                              Kristen L. Mix